### Artemas Lee & another *vs.* Jonathan Wheeler.

In an action for goods sold and delivered to a third person and charged to him on the plaintiff's books of account, the plaintiff may introduce the testimony of his clerk, who delivered the goods, that he did so on the defendant's credit, and relied on him for payment; and also, to prove the improbability of the plaintiff's trusting him, evidence of that person's poverty and bad credit. But the defendant cannot ask his agent, who settled a former similar account for him with the plaintiff, to testify whether he settled it because he thought him liable; nor give in evidence the reasons of his having at the time of that settlement paid bills contracted by others with the plaintiff; nor that another clerk of the plaintiff, after the delivery of the goods sued for, asked the defendant's agent about the solvency of the third person, and spoke of him as running up a bill with the plaintiff.

Action of contract for goods sold to the defendant, and delivered by his order to Jeremiah B. Wheeler since February 1854. The answer denied any sale to the defendant, or delivery to Jeremiah B. Wheeler by his authority.

At the trial in the court of common pleas, before *Perkins,* J., the plaintiffs introduced evidence tending to show that Jeremiah B. Wheeler was engaged by the defendant to carry on a mill, and was directed by him to obtain the goods needed on his account at the plaintiffs' shop; and communicated this to J. L. Perkins, the plaintiffs' head clerk, and obtained goods which were charged on the plaintiffs' books to Jeremiah B. Wheeler; and that the defendant, on being afterwards told by the clerk what Jeremiah had said and done, said " it was all right."

The plaintiffs then asked Perkins, Upon whose credit the goods were delivered to Jeremiah, and upon whom he relied for

payment for them. The defendant's counsel objected. But the judge allowed the question to be put, for the purpose of showing that, notwithstanding the charges on the books, the plaintiffs really gave credit to the defendant; and the witness answered that after his conversation with Jeremiah he relied upon the defendant for payment.

The plaintiffs introduced evidence that Jeremiah B. Wheeler was, as they knew, a poor man, having but little property, if any; and one of them was allowed, against the defendant's objection, to testify that Jeremiah was not in good pecuniary credit at the time of the sale of the goods, " for the purpose of arguing to the jury from it, in connection with the other facts in the case, upon the probabilities of credit being given to so large an amount, under the circumstances, by him."

Charles B. Eaton, another clerk of the plaintiffs, who had charge of their books and settled their accounts, testified, without opposition, that in February 1854 he settled a previous account with Jeremiah B. Wheeler, for goods delivered (as the plaintiffs claimed) under the same agreement, by transferring it to the defendant, who by his agent, Holland Farr, paid it, without objection; and that one of the plaintiffs was present at that settlement. Farr, being called by the defendant, testified that the plaintiffs had no bill of Jeremiah B. Wheeler's account, but said that Jeremiah had a " pass book," and if it was not all right they would make it so; and so the witness allowed it. The defendant then asked, " Did you settle that account because you considered Jonathan Wheeler liable ? " This question was objected to by the plaintiffs and excluded by the judge.

The defendant was allowed to prove all that occurred at and in connection with that settlement, and to read to the jury all the items of account settled, and in this manner it appeared that at the time of that settlement bills due from other persons were allowed to be transferred to and were paid for in the account of the defendant. The defendant thereupon offered to show that these persons were in the defendant's employment, and were then in his debt. But the judge excluded the evidence.

The defendant further offered to show by Farr that Eaton

had inquired of him, after about $125 worth of goods had been delivered, as to the solvency of Jeremiah B. Wheeler, and had informed him that " Jeremiah had run up considerable of a bill there." But the judge ruled, " that, so far as this was offered for the purpose of affecting the plaintiffs by Eaton's conversations as their agent, it was not admissible, as the inquiry of Eaton did not appear to be a part of any transaction in which Eaton was engaged for the plaintiffs."

The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*C. Devens, Jr. & G. F. Hoar,* for the defendant. 1. The plaintiffs might explain the charges on their books by evidence of facts and conversations bearing upon or making the contract. *James* v. *Spaulding,* 4 Gray, 451. But the statement of Perkins that he relied on the defendant for payment was incompetent, both ,as contradicting the entry in the plaintiffs' books of account, and as stating the agent's intention only. *Given* v. *Albert,* 5 W. & S. 333. *Andrews* v. *Jones,* 10 Alab. 460. *Berry* v. *The State,* 10 Georgia, 511.

2. The evidence as to the pecuniary credit of Jeremiah B. Wheeler was inadmissible. It was too remote, and had no direct bearing upon the question whether a contract had been made with the defendant. *Swamscot Machine Co.* v. *Walker,* 2 Foster, 457. *Orcutt* v. *Ranney,* 10 Cush. 183. *Hilton* v. *Scar borough,* 5 Gray, 422. *Robbins* v. *Harvey,* 5 Conn. 335 1 Greenl. Ev. §§ 52, 448.

3. If the evidence of the intention of the plaintiffs' agent in making the entry was admissible, evidence of the intention of the defendant's agent in settling the accounts was equally admissible.

4. The evidence as to the defendant's payments of other persons' bills, at the time of his settlement with the plaintiffs in 1854, was relevant, as showing that the reasons which induced him to pay those bills influenced him when settling Jeremiah B. Wheeler's account. *Loring* v. *Gurney,* 5 Pick. 15. *Tibbetts* v. *Sumner,* 19 Pick. 166. *Bradley* v. *Obear,* 10 N. H. 477.

5. Eaton's inquiry of Farr about Jeremiah B. Wheeler's insol-

vency was within the scope of Eaton's agency, and should have been admitted to show that the plaintiffs' agent who sold the goods relied on Jeremiah B. Wheeler for payment. *Dorne* v. *Southwork Manuf. Co.* 11 Cush. 205, & cases there cited. 1 Parsons on Con. 49, & cases cited.

*N. Wood,* for the plaintiffs.

METCALF, J.   1. The testimony of Perkins that he relied on the defendant to pay for the goods delivered to Jeremiah B. Wheeler was rightly admitted.   Perkins had the general charge of the plaintiffs' store, and it was to him that Jeremiah B. made the statement, before the goods were delivered, that the defendant was to pay for them.   The case of *James* v. *Spaulding*, 4 Gray, 451, decides that the charge on the books was not conclusive against the plaintiffs, but that they might show, by oral testimony, that the sale was to the defendant.

2. The evidence of Jeremiah B. Wheeler's poverty and want of pecuniary credit, we think, was competent, for the purpose for which it was introduced.   In connection with the other evidence in the case, it might rightly have an influence on the jurors' minds.   No case cited for the defendant, to show that it was inadmissible, bears on that point, except *Swamscot Machine Co.* v. *Walker*, 2 Foster, 457.   And the decision in that case shows this only ; that the plaintiffs could not have been permitted to give evidence that, before the delivery of the goods now sued for, they had refused to receive Jeremiah B. Wheeler's note in payment for goods sold by them to a third person.

3. The defendant was rightly refused permission to inquire of Farr — his agent in the settlement of Jeremiah B.'s account in February 1854 by transferring it to the defendant on the plaintiffs' books — whether he so settled that account because he considered the defendant liable to pay it.   Farr's opinion of the defendant's legal liability to the plaintiffs was not admissible in evidence for or against either party.

4. The testimony offered by the defendant respecting his pecuniary relation to those other persons whose accounts, as well as those of Jeremiah B., were transferred to him on the plaintiffs' books in February 1854, and which he paid, was imma-

terial, and was therefore rightly excluded.   The question at the trial was, whether the defendant was liable to the plaintiffs for the goods delivered to Jeremiah B. subsequently to February 1854.

5. The testimony, which the defendant proposed to introduce as to a conversation between Farr and Eaton, was rightly rejected, for the reason assigned by the judge at the trial.

*Exceptions overruled.*